UNITED STATES of America,
Plaintiff–Appellee,

v.

Eric Lee JOBSON, Defendant–Appellant.

No. 95–1743.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 3, 1996.

Decided Dec. 10, 1996.

---

Patricia G. Blake and Krishna S. Dighe (argued and briefed), Office of the U.S. Attorney, Detroit, MI, for Plaintiff–Appellee.

Jill Leslie Price (argued and briefed) and Leroy T. Soles, Federal Public Defenders Office, Detroit, MI, for Defendant–Appellant.

Before: KENNEDY, JONES and DAUGHTREY, Circuit Judges.

KENNEDY, Circuit Judge.

Defendant Eric Jobson appeals his jury conviction for possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). On appeal, defendant contends (1) that the prosecution's failure to preserve requested radio dispatch recordings violated his due process right to a fair trial; and (2) that the District Court committed error in admitting evidence of defendant's alleged involvement in gang activities and in failing to give adequate limiting instructions. For the reasons set forth below, we REVERSE.

## I. FACTS

Shortly before 9:20 p.m. on July 2, 1994, Officers Wasmund and Philpot of the Detroit Police Department (DPD), while on routine patrol, saw defendant walking north along Freer Street. Officer Wasmund, who recognized defendant as someone with whom he had previously dealt, testified that defendant was carrying a rifle that was partially concealed by a jacket he was holding. When defendant saw the officers, he began to run. The officers followed defendant to 4337 Freer Street, where they say defendant dropped the jacket and rifle on the porch and ran inside. Officer Wasmund followed defendant into the house and arrested him, while Officer Philpot retrieved the jacket and rifle. The weapon was a semi-automatic assault rifle.

Defendant was arrested and charged by state authorities with carrying a concealed weapon. Defendant was soon released, the charge dropped, and the case referred to federal prosecutors. Because of his ties to a gang known as the "Square Boys," the federal investigation was assigned to the Multi-Agency Gang Task Force. On July 11, a federal complaint charged defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Defendant was arrested the following day.

Defendant was convicted on February 16, 1995 and was sentenced to sixty-three months imprisonment, three years of supervised release, and a mandatory assessment of $50.00.

## II. DISCUSSION

### A. Destruction of Evidence

Defendant first claims that the District Court erred in denying defendant's motion to dismiss the indictment on the basis of the destruction of potentially exculpatory evidence, namely the DPD radio dispatch tape made during defendant's arrest on July 2, 1994. Defendant maintains that the tape recordings would have corroborated his claim that he was not carrying a gun and that the police seized the gun from a room inside 4337 Freer Street. We review this issue de novo. See United States v. Cooper, 983 F.2d 928, 931 (9th Cir.1993).

On August 3, 1994, defendant filed a motion for government agents to retain rough notes. The motion requested an order:

> requiring any and all government agents who have investigated the charges in this and related cases to retain and preserve all rough notes, rough drafts, *tape recordings*, memoranda, *radio log reports*, and work sheets taken as part of their investigation
> . . .

(emphasis added.) The government responded on September 9, 1994 that it had instructed its agents to preserve such evidence. On September 15, defendant filed a motion for discovery and inspection, requesting, *inter alia*, "tape recorded radio calls" made by the DPD. Because the Assistant United States Attorney (AUSA) handling the case was on vacation from September 15–23, 1994, he did not become aware of this discovery motion until counsel for defendant personally showed it to him in court on September 26.

The AUSA raised the issue of the tape with Officer Wasmund on October 11, but·by this time the tape had been erased. It was the policy of the DPD routinely to erase and reuse tapes within 90 days after their use, which in.this case meant the tape had been erased on October 2, 1994.

On October· 28, 1994, defendant filed a motion to dismiss the indictment, claiming that the tape was potentially exculpatory and that it was destroyed in bad faith. The AUSA responded that he had not learned of the request for the dispatch tape until September 26, when defense counsel showed him the September 15 discovery motion in court. The AUSA responded to the request two weeks later, but by then the tape had been erased.[1] The AUSA stated that he had no prior knowledge that radio dispatch tapes were routinely erased by the DPD after 90 days. The District Court denied defendant's motion to dismiss the indictment.

■ Under the Due Process Clause, the Supreme Court has developed "what might loosely be called the area of constitutionally guaranteed access to evidence." *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984) (quoting *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982)). Under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), the suppression of material exculpatory evidence violates a defendant's due process rights, irrespective of the good faith or bad faith of the prosecution. However, where the government fails to preserve evidence whose exculpatory value is indeterminate and only "potentially useful" to defendant, we apply a different test. *Arizona v. Youngblood,* 488 U.S. 51, 57–58, 109 S.Ct. 333, 337–38, 102 L.Ed.2d 281 (1988). In such a case, the defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the

exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means. *See Youngblood,* 488 U.S. at 57–58, 109 S.Ct. at 337–38; *Trombetta,* 467 U.S. at 488–89, 104 S.Ct. at 2533–34.

■ The first two elements of this tripartite test are inter-related. "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood,* 488 U.S. at 56–57 n. *, 109 S.Ct. at 336 n. *. To establish bad faith, then, a defendant must prove "official animus" or a "conscious effort to suppress exculpatory evidence." *Trombetta,* 467 U.S. at 488, 104 S.Ct. at 2533.

■ While we disapprove of the government's dilatory response to defendant's discovery requests, we cannot say that it acted in bad faith. There is no evidence that anyone in the Detroit Police Department or the U.S. Attorney's office suspected that the tape was exculpatory. The tape was erased not as a result of malice, but routine police department policy. Though the government was negligent, perhaps even grossly negligent, in failing to preserve the tape, there is no evidence that it acted in bad faith. *See United States v. Deaner,* 1 F.3d 192, 200–01 (3d Cir.1993) (government's destruction of marijuana before sentencing was not in bad faith, despite defendant's earlier discovery request for the marijuana); *see also United States v. Femia,* 9 F.3d 990, 993–94 (1st Cir.1993) (government's destruction of tape recordings of conversations between defendant and alleged coconspirators did not violate due process, despite government's gross negligence in failing to preserve the tapes).[2]

---

1. The government explained that it had not interpreted defendant's August 3, 1994 motion to preserve rough notes as calling for the preservation of the radio dispatch tape. The government viewed the request for "tape recordings" and "radio log reports" as referring to recordings made in the process of preparing reports.

2. We cannot help but note, however, that a timely response to an outstanding discovery request would have avoided the problem presented here. United States Attorneys would be well advised to apprise themselves of the procedures, whether local or federal, for the routine destruction of evidence potentially material to a case.

Even if the destruction of the tape had been in bad faith, however, defendant would not prevail. The Due Process Clause does not impose "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Youngblood,* 488 U.S. at 58, 109 S.Ct. at 337. The government's constitutional duty to preserve evidence is limited to evidence that possesses an exculpatory value which was apparent before the evidence was destroyed. *Trombetta,* 467 U.S. at 489, 104 S.Ct. at 2534.

Defendant's contention that the dispatch tape would have supported his claim that the police recovered the gun from inside the building at 4337 Freer Street is no more than "mere speculation." *Jones v. McCaughtry,* 965 F.2d 473, 479 (7th Cir.1992) (no violation of due process where destroyed evidence was of only speculative exculpatory value). There is no evidence of any kind that the dispatch tape would contain such exculpatory information. No one ever listened to the tape. Where "[t]here is no indication that there was anything exculpatory" about destroyed evidence, due process has not been violated. *United States v. Braggs,* 23 F.3d 1047, 1051 (6th Cir.1994).

Because the destruction of the dispatch tape was not in bad faith and the possibility that the tape had exculpatory value was not established, we hold that the District Court did not err in denying defendant's motion to dismiss the indictment.

## B. Admission of Defendant's Gang Affiliation

Defendant also claims that the District Court committed error in admitting evidence concerning defendant's membership in a gang.

In its opening, the government told the jury that the defendant had been arrested by the Multi–Agency Gang Task Force and described the role of the Task Force in combatting gangs. The role of the Task Force was mentioned at several subsequent points during the trial. Officer Nardoni testified that defendant had on a prior occasion stated that he was a member of the Square Boys gang. He also testified that after defendant was arrested on July 12, defendant told Officer Nardoni that his gang "should have shot it out" with the police because the gang had more firepower than the police. DPD Officer Philpot testified that while he was arresting defendant on July 2, the other residents of 4337 Freer cursed him, using the nickname that "mostly gangs in the city know me by." Officer Philpot also testified that the Detroit Gang Squad was notified upon defendant's arrest.

The District Court sustained objections to two gang-related remarks. First, the court sustained an objection to DPD Officer Wasmund's testimony that he was familiar with the Square Boys gang because of arrests for stolen vehicles and drive-by shootings. The court ordered the jury to disregard the offending testimony and denied a motion for mistrial. Second, the court sustained an objection to Border Patrol Agent Lindeman's testimony that the Border Patrol was involved in the Multi–Agency Task Force because some of the gangs were transporting guns into Canada.

Objections to the admissibility of the evidence concerning defendant's gang affiliation were raised several times before and during trial. In response to defendant's pretrial request for notice of FED.R.EVID. 404(b) evidence,[3] the government informed defendant of its possible intention to introduce evidence concerning, *inter alia,* defendant's gang membership.[4] At a hearing on September

---

**3.** Rule 404(b) reads:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.... FED.R.EVID. 404(b).

**4.** We are not certain that evidence of a defendant's gang membership is evidence of "other crimes, wrongs, or acts," as required for Rule 404(b) to apply. Such evidence might arguably be admitted as direct evidence, subject to the test of relevancy under FED.R.EVID. 401 and FED. R.EVID. 403's balancing of the probative value of the evidence against its potential prejudice to defendant. *See, e.g., United States v. Butler,* 71 F.3d 243 (7th Cir.1995) (evidence of defendant's

26, 1994, the District Court held that the government had provided sufficient notice of potential 404(b) evidence, but the court declined to rule on its admissibility. At another pretrial hearing on November 28, 1994, the District Court found that defendant's statement that "we" have more firepower than the police and should have shot it out with them was relevant to knowledge and was more probative than prejudicial.

On the day of trial, defendant once more raised the 404(b) issue. Under the mistaken impression that it had previously ruled the gang membership admissible, the District Court indicated that it would stand by its original decision.[5] In fact, though, the court had merely ruled that the government had provided sufficient notice to defendant of potential 404(b) evidence and that the statement regarding firepower was admissible. The court had not previously ruled on the admissibility of gang membership.

■ In reviewing a district court's decision to admit evidence under Rule 404(b), we first review for clear error the district court's factual finding that the prior act occurred. Second, we review *de novo* the district court's determination that the evidence was admissible for a legitimate purpose. Finally, we review for abuse of discretion the district court's determination that the probative value of the other acts evidence is not substantially outweighed by its prejudicial effect. *United States v. Merriweather,* 78 F.3d 1070, 1074 (6th Cir.1996); *United States v. Gessa,*

971 F.2d 1257, 1261–62 (6th Cir.1992) (en banc).

■ In ruling on the admissibility of uncharged misconduct under Rule 404(b), the district court must always determine:

> whether one of the factors justifying the admission of "other acts" evidence is material, that is, "in issue," in the case, and if so, whether the "other acts" evidence is probative of such factors. The court must also determine whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*Merriweather,* 78 F.3d at 1075 (quoting *United States v. Johnson,* 27 F.3d 1186, 1190 (6th Cir.1994)). We once again remind district courts to follow this analysis in determining the admissibility of evidence submitted under Rule 404(b).

■ There were two items of gang evidence the District Court admitted. First, the court admitted defendant's admission on some prior occasion when he was in contact with the police that he was a member of the Square Boys gang. Second, the court admitted defendant's statement during his federal arrest regarding the gang's firepower.

■ In holding the gang evidence admissible, the District Court implicitly found, without so stating, that defendant was a member of the Square Boys gang. Given Officer Nardoni's testimony that he had had prior contacts with defendant and that defendant had previously admitted to him that he was a member of the Square Boys, the Dis-

---

gang activities admissible as direct evidence in prosecution for possession of a firearm by a felon). However, both parties argued at trial and on appeal that the gang evidence should be considered under Rule 404(b). Because Rule 404(b) applies to the admission of evidence of "any conduct of the defendant which may bear adversely on the jury's judgment of his character," *United States v. Cooper,* 577 F.2d 1079, 1087–88 (6th Cir.1978), we believe that Rule 404(b) probably ought to govern evidence of a defendant's gang membership where membership is not in fact necessary to prove an element or ultimate fact of the crime charged. Most jurors, after all, are likely to look unfavorably upon the joining of a street gang, particularly one involved with firearms.

5. The relevant portion of the trial transcript is as follows:

[AUSA]: Judge, Your Honor ruled September 30th of last year that the 404(b) evidence that would be—that has been disclosed to the defense includes the defendant's admitted gang membership.
THE COURT: Well, all right then, that's my ruling and that means the admission to the officers will have to be permitted.
[COUNSEL FOR DEFENDANT]: Your Honor, for the record, I think its—it violates the Federal Rules of Evidence.
THE COURT: Well listen. Today is not the hearing. That order entered after I was fully apprised after what the two arguments were in this case.... That's the order that I entered when I was fully advised which I am now and I'll have to stand on that order.

trict Court's determination was not clearly erroneous. Error in not making this finding on the record was harmless.

■ The government asserts that defendant's involvement in a gang is probative of knowledge, intent, and opportunity. The District Court did not identify for what purpose it was admitting the evidence of gang memberships, so we shall consider each of the government's asserted grounds.[6] Although the government is required under 18 U.S.C. § 922(g)(1) to prove defendant's knowledge of the firearm, *United States v. Chesney*, 86 F.3d 564, 572 (6th Cir.1996), prior bad acts are not admissible to prove defendant's knowledge unless defendant places his mental state at issue or his knowledge of the firearm is not inferable from proof of possession itself. *United States v. Hatfield*, 815 F.2d 1068, 1072 (6th Cir.1987). In the instant case, defendant's knowledge that what he was carrying in his arms was a gun was scarcely in issue. Defendant's theory of defense was that the gun was not his and that he did not have possession of it on July 2, 1994. He did not claim nor could there be any possible basis for his claiming that he did not know that a gun was in his possession.

Defendant's intent was also not in issue because the gun possession charge does not require proof of specific intent. *United States v. Bennett*, 975 F.2d 305, 308 (6th Cir.1992). Were knowledge the only basis for admission of the gang evidence, any slight probative value it might have would be outweighed by its prejudice.

■ We hold, however, that defendant's gang membership would be admissible to establish his opportunity to commit the crime. Evidence used to establish opportunity is evidence that shows "access to or presence at the scene of the crime" or the possession of "distinctive or unusual skills or abilities employed in the commission of the

crime charged." 1 MCCORMICK ON EVIDENCE § 190, at 807 (John William Strong ed., 4th ed. 1992); *see also United States v. Woods*, 613 F.2d 629, 636 (6th Cir.1980) (in prosecution for armed robbery, evidence that defendant possessed firearms is admissible to show defendant's opportunity to commit crime charged). Given the testimony linking the Square Boys gang with the use of guns,[7] defendant's membership in the gang provided him with special access to guns. Although we recognize that most people not belonging to gangs have access to firearms, most people do not own or have access to semi-automatic assault rifles. Defendant's membership in the Street Boys gang undoubtedly made it easier and more likely for him to possess an assault rifle than for the average citizen. We hold, therefore, that defendant's gang membership would be admissible to show his opportunity to possess the gun recovered on July 2, 1994.

■ Absent additional error, we would remand this case to the District Court with the instruction to balance the probative value of the gang evidence as to opportunity against its potential for substantial prejudice, as required under FED.R.EVID. 403. The District Court did expressly determine that Rule 403 balancing favored the admissibility of defendant's statement that "we" have more firepower than the police and should have shot it out with them, but that finding related only to knowledge. While we have reluctantly expressed our willingness to assume, in the absence of an express balancing, that the district court implicitly held the balance to favor admissibility, *Merriweather*, 78 F.3d at 1078 n. 1, the circumstances surrounding the admissibility of the gang evidence in this case persuades us that such an assumption would be inappropriate. As already noted, the District Court admitted the gang evidence under the erroneous belief that it had already ruled on the issue. We

---

**6.** Our willingness to consider any possible ground to admit the evidence does not suggest that we approve of the District Court's silence on this matter. District courts should identify on the record which of the 404(b) factors justifies the admission of the other acts evidence. Unless it does so, it will be unable to instruct the jury as to the limited purpose for the evidence.

**7.** Officer Nardoni testified that after arresting defendant on July 12, defendant looked at Nardoni's weapon and said, "I would have shot you if I had known that we got more fire power then [sic] that bullshit."

cannot assume, therefore, that the court ever engaged in the Rule 403 balancing. We would ordinarily remand to the District Court to conduct this required balancing.[8] *See United States v. Robinson*, 700 F.2d 205, 213 (5th Cir.1983) (holding that where the district court fails to make an express finding that the probative value of 404(b) evidence outweighs its prejudice, the Court of Appeals should remand "unless the factors upon which the probative value/prejudice evaluation were made are readily apparent from the record, and there is no substantial uncertainty about the correctness of the ruling").

■ We decline to remand the case, however, because we are convinced that the District Court's failure to instruct the jury as to the limited use of the 404(b) evidence deprived defendant of a fair trial. When evidence is admitted under Rule 404(b), the jury must be "clearly, simply, and correctly instructed concerning the narrow and limited purpose for which the evidence may be considered." *Johnson*, 27 F.3d at 1193. After admitting evidence under Rule 404(b), the district court "must carefully identify, in its instructions to the jury, the specific factor named in the rule that is relied upon to justify admission of the other acts evidence, explain why that factor is material, and warn the jurors against using the evidence to draw the inferences expressly forbidden in the first sentence of Rule 404(b)." *Id.* at 1194.

■ Before the District Court issued its final instructions to the jury, the defendant requested an instruction limiting the use of the gang evidence. While the request was somewhat inartfully presented, it was sufficient to alert the court to the necessity of identifying the 404(b) evidence. The District Court declined to give the instruction sought by defendant and instead instructed the jury as follows:

> You've heard testimony that the defendant committed some other acts other than the ones charged in the indictment. You cannot consider this testimony as evidence that the defendant committed the crime that he is on trial for now.

Instead, you can only consider it in deciding for the purposes stated to you. You may only consider it for the purpose stated to you. Do not consider it for any other purpose.

Remember the defendant is on trial here only for the offense of felon in possession of a firearm, not for the other acts. Do not return a guilty verdict unless the government proves the crime charged beyond a reasonable doubt.

These instructions were inadequate to safeguard against the impermissible use of the gang evidence because they do not inform the jury of the proper purpose for which the gang evidence could be considered. While the instructions indicate that the jury should consider the evidence only "for the purposes stated to you," the court never told the jury what these purposes were. In addition, no limiting instructions were given at the time the gang evidence was admitted. This is not a case, moreover, where the jurors would necessarily be aware of the other acts to which the court was referring so that the error could be found to be harmless. It is not enough for a district court to instruct jurors not to consider Rule 404(b) evidence as "evidence that the defendant committed the crime that he is on trial for now." The district court must expressly indicate the *precise purpose* for the other acts evidence. In this case, the District Court was obliged to instruct the jurors that they could consider the evidence of defendant's gang membership only to establish his opportunity to possess the firearm. Given the court's failure to provide an effective limiting instruction, the jurors "could not have had the vaguest notion of the limited proper purpose for which they might have considered the evidence." *Merriweather*, 78 F.3d at 1076. We must assume, then, that the jury improperly considered the gang evidence on the direct issue of defendant's guilt, which is a clear violation of Rule 404(b). Under all the circumstances of this case, we conclude that the failure to issue an effective limiting instruction was not harmless.

8. In the weighing, the court may consider whether defendant's gang membership may inevitably become an issue in the case in view of defendant's defense of bias on the part of the police officers.

### III.

Having concluded that the conviction must be set aside, we decline to reach the remaining assignments of error.

### IV.

For the foregoing reasons, the judgment of conviction is REVERSED and the case is REMANDED for a new trial.