*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0255P (6th Cir.)
File Name: 01a0255p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

　　　*v.*

CHRIS WRIGHT,
　　　　　　*Defendant-Appellant.*

No. 00-5010

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-20179—Bernice B. Donald, District Judge.

Argued: May 1, 2001

Decided and Filed: August 3, 2001

Before: JONES, SILER, and GILMAN, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Bruce I. Griffey, ASSISTANT FEDERAL
PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.
Jennifer Lawrence Webber, ASSISTANT UNITED STATES
ATTORNEY, Memphis, Tennessee, for Appellee.
**ON BRIEF:** Doris A. Randle-Holt, ASSISTANT FEDERAL
PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.
Jennifer Lawrence Webber, ASSISTANT UNITED STATES
ATTORNEY, Memphis, Tennessee, for Appellee.

SILER, J., delivered the opinion of the court, in which JONES, J., joined. GILMAN, J. (pp. 7-10), delivered a separate concurring opinion.

———————————

**OPINION**

———————————

SILER, Circuit Judge.    Defendant Chris Wright was convicted on one count of arson in violation of 18 U.S.C. § 844(i). He appeals the district court's denial of his motion to dismiss his indictment on the ground that government fire investigators' failure to preserve physical evidence from the scene of the fire violated his due process right to access exculpatory evidence. We affirm.

## I. Background

On October 6, 1993, a 124,342 square foot Wal-Mart retail and warehouse building in Memphis, Tennessee was destroyed by fire. The day after the fire, the National Response Team of the Bureau of Alcohol, Tobacco and Firearms ("ATF") assisted local fire departments with the investigation of that fire. John Mirocha, an ATF special agent and certified fire investigator, examined the fire scene and interviewed witnesses in order to determine the cause of the fire. After completing his investigation, Mirocha eliminated all accidental causes, including electrical malfunction, from being the cause of the fire. In his opinion, the fire's cause was arson.

During the course of his investigation, Mirocha learned that there had been a previous fire at the same Wal-Mart on October 1, 1993. In a report from the October 1 fire, a fire lieutenant, who was not a trained fire investigator, had indicated that the cause of that fire appeared to be an electrical wiring problem. Based on his awareness of that report, Mirocha examined the electrical system that was suspected to have been the origin of the October 1 fire. He determined that the electrical system in question had not been

**Also:**

"The Due Process Clause of the Fourteenth Amendment . . . makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence." *Id.* at 57.

---

My disagreement with the *Jobson* test does not, however, affect my concurrence in the ultimate outcome of the present case. Wright failed to show that the destroyed evidence was materially exculpatory evidence under *Youngblood* and *Trombetta*. He is therefore bound by the elements needed to prove "potentially useful" evidence under *Jobson*, the first of which is proof of bad faith on the part of the government. Because I agree with the court that Wright has failed to show bad faith on the part of the government, I concur in the judgment despite my disagreement with the test set forth in *Jobson*.

---

the origin of either fire. By examining all relevant electrical evidence, Mirocha determined that the October 6 fire was not electrical. While no electrical evidence was preserved for future inspection, Mirocha documented and photographed that evidence before it was destroyed.

In September 1997, Wright was indicted on one count of arson in violation of 18 U.S.C. § 844(i) for the October 6, 1993 Wal-Mart fire. He filed a motion to dismiss the indictment, claiming that government investigators, by failing to preserve relevant electrical evidence, "destroyed and/or disposed of all of the critical physical evidence from [the] scene of the fires on October 1, 1993 and October 6, 1993," in violation of his due process right to access exculpatory evidence. The district court denied Wright's motion.

Wright was convicted after a jury trial and was sentenced to fifty-seven months incarceration. He contends that the district court erred by denying his motion to dismiss the indictment.

## II. Discussion

### a. Standard of Review

Where a defendant moves a district court to dismiss his indictment on the ground that the government failed to preserve exculpatory evidence, we review the district court's denial of that motion de novo. *See United States v. Jobson*, 102 F.3d 214, 217 (6th Cir. 1996).

### b. Analysis

To safeguard a defendant's due process right to present a complete defense, the Supreme Court has developed "'what might loosely be called the area of constitutionally guaranteed access to evidence.'" *California v. Trombetta*, 467 U.S. 413, 485 (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)). Separate tests are applied to determine whether the government's failure to preserve evidence rises to the level of a due process violation in cases where material

exculpatory evidence is not accessible, *see Trombetta*, 467 U.S. at 489, versus cases where "potentially useful" evidence is not accessible. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

In *Trombetta*, the Court held that the government violates a defendant's due process rights where material exculpatory evidence is not preserved. *See Trombetta*, 467 U.S. at 489. For evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 488-89. The destruction of material exculpatory evidence violates due process regardless of whether the government acted in bad faith. *See id.* at 488; *Youngblood*, 488 U.S. at 57.

In *Youngblood*, 488 U.S. at 57, the Court held that "the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." The government does not have "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Id*. at 58. For the failure to preserve potentially useful evidence to constitute a denial of due process, a criminal defendant must show bad faith on the part of the government. *See id.* "The presence or absence of bad faith by the [government actor] for the purposes of the Due Process Clause must necessarily turn on the [government actor's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* at 56 n.*. Because the *Youngblood* court found that police did not act in bad faith by failing to preserve potentially useful evidence, it rejected Youngblood's due process claim without further analysis.

In *Jobson*, 102 F.3d at 218, we recognized that, where potentially useful evidence is not preserved, bad faith alone

defendant convinces the court that the government acted in bad faith in destroying potentially exculpatory evidence, he does not have to prove the other two elements set forth in *Trombetta* to establish a due process violation.

The various tests of *Trombetta*, *Youngblood*, and *Jobson* are summarized in the table below:

| | *Trombetta*, 467 U.S. 479 (1984) | *Youngblood*, 488 U.S. 51 (1988) | *Jobson*, 102 F.3d 214 (1996) |
|---|---|---|---|
| Tests for: | "Constitutional materiality." *Id.* at 489 (later referred to in *Youngblood* as "material exculpatory evidence") | "Potentially exculpatory evidence." *Id.* at 57-58. | "Potentially useful" evidence. *Id.* at 218. |
| What must be shown: | "[E]vidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489. | "[I]t [the evidentiary material] could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* at 57. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58. | "(1) [T]hat the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 218. |

In *Jobson*, however, this court misinterpreted *Youngblood* by creating a new test to determine whether the defendant's due-process rights were violated when the government destroyed evidence "whose exculpatory value is indeterminate and only 'potentially useful.'" *Jobson*, 102 F.3d at 218. *Jobson* sets forth three elements that must be established: "(1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* (citing *Trombetta* and *Youngblood*).

The problem with *Jobson* is that it conflates the differing tests of *Trombetta* and *Youngblood* such that there is no longer any distinction between materially exculpatory and potentially exculpatory evidence. *Jobson* purports to delineate the test for evidence "whose exculpatory value is indeterminate and only 'potentially useful,'" *id.* — that is, potentially exculpatory evidence. But the last two parts of the *Jobson* test — that the exculpatory value of the evidence was apparent before its destruction, and that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means — are precisely the elements that must be shown to demonstrate that evidence is materially exculpatory. *See Trombetta*, 467 U.S. at 489 (stating that for evidence to be materially exculpatory, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means").

Thus the first part of the *Jobson* test — good or bad faith — should be irrelevant once the last two parts of the *Jobson* test are shown, because the Supreme Court has expressly held that the determination of good or bad faith is irrelevant for materially exculpatory evidence. *See Youngblood*, 488 U.S. at 57 ("The Due Process Clause of the Fourteenth Amendment . . . makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence."). Put another way, once a

will not violate a criminal defendant's due process right to access exculpatory evidence. For a due process violation to exist, *Jobson* requires that once a defendant demonstrates bad faith and that the exculpatory value of evidence was apparent before its destruction, principles that we found to be interrelated for the reason stated in *Youngblood*, he or she must also demonstrate an inability to obtain comparable evidence by other reasonably available means. *See id.* And, where the government is negligent, even grossly negligent, in failing to preserve potential exculpatory evidence, the bad faith requirement is not satisfied. *See id.*

Wright contends that fire investigators' failure to preserve electrical evidence recovered from the October 6, 1993 Wal-Mart fire violated his constitutional right to access exculpatory evidence. Because that evidence was only potentially useful and the government did not act in bad faith by failing to preserve it, Wright's due process right to access exculpatory evidence was not violated.

While Wright contends that the evidence in question was material exculpatory evidence, the evidence was only potentially useful. The heart of Wright's argument is that the destruction of electrical evidence prevented his expert from conducting future tests, the results of which may have exonerated him by showing that an electrical malfunction could have been the cause of the fire. Pursuant to *Youngblood*, such evidence was not material exculpatory evidence. Instead, it was only potentially useful evidence.

Because we find no bad faith on the part of fire investigators who failed to preserve the potentially useful electrical evidence, we, like the *Youngblood* court, reject Wright's due process claim without further analysis. The record contains no allegation of official animus toward Wright or of a conscious effort to suppress exculpatory evidence. There is no evidence that any fire investigator considered any electrical apparatus to be the cause of the October 6 fire. Even if the fire investigators were negligent

in failing to preserve electrical evidence, negligence does not constitute bad faith.

The record demonstrates that a professional, good faith fire investigation was conducted. Wright argues that Mirocha acted in bad faith because he was aware of a fireman's report that an October 1 fire at the Wal-Mart was electrical, suggesting that the same electrical apparatus could have caused the October 6 fire, but Mirocha, a certified fire investigator, independently examined all relevant electrical evidence, including the apparatus suspected to have caused the October 1 fire, before concluding that the October 6 fire was not electrical. Thus, having determined that an electrical malfunction did not cause the October 6 fire, investigators destroyed electrical evidence along with other items which were ruled not to be relevant or material to the fire investigation. The fire scene encompassed over 120,000 square feet of retail and warehouse space and, given the enormity of physical evidence that could have been preserved, we conclude, as did the district court, that the investigators did not act in bad faith by failing to preserve items that it found not to be the source of the fire.

**AFFIRMED.**

---

### CONCURRENCE

---

RONALD LEE GILMAN, Circuit Judge, concurring. I fully concur with the court's conclusion that the government's failure to preserve the electrical evidence recovered from the October 6, 1993 Wal-Mart fire did not violate Wright's due process right to access exculpatory evidence. I write separately, however, because I believe that this court's key case on the issue, *United States v. Jobson*, 102 F.3d 214 (6th Cir. 1996), misapplies the tests set forth by the Supreme Court in *Arizona v. Youngblood*, 488 U.S. 51 (1988), and *California v. Trombetta*, 467 U.S. 479 (1984).

According to the Supreme Court, "[t]he Due Process Clause of the Fourteenth Amendment . . . makes the good or bad faith of the State *irrelevant* when the State fails to disclose to the defendant material exculpable evidence." *Youngblood*, 488 U.S. at 57 (emphasis added). To be material and exculpatory, evidence must "possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489.

But the Supreme Court has applied a different test for determining whether the government's failure to preserve *potentially* exculpatory evidence violates the defendant's right to due process, explaining that "the Due Process Clause requires a *different result* when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57 (emphasis added). Specifically, the Court stated that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve *potentially useful* evidence does not constitute a denial of due process of law." *Id.* at 58 (emphasis added).