NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0781n.06
Filed: September 7, 2005
File Name: 05a0781n.06
Filed: September 7, 2005

**No. 04-5832**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,     )
    )
    Plaintiff-Appellee,     )
    )
v.     )   ON APPEAL FROM THE UNITED
    )   STATES DISTRICT COURT FOR THE
CHESTER GENERETT,     )   WESTERN DISTRICT OF TENNESSEE
    )
    Defendant-Appellant.     )

Before: BOGGS, Chief Judge; SUTTON, Circuit Judge; RICE, District Judge.[*]

SUTTON, Circuit Judge. Chester Generett challenges his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), arguing that the government violated the Due Process Clause by auctioning off potentially useful evidence (a vehicle) before the beginning of trial. Because Generett has shown neither that the auctioned vehicle was exculpatory nor that any government officials acted with bad faith, we affirm.

---

[*]The Honorable Walter Herbert Rice, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

No. 04-5832
*United States v. Generett*

I.

As Officer Charles Teeters and his partner Charles Smith of the Memphis, Tennessee, Police Department patrolled the North Precinct in Memphis, Tennessee, on February 14, 2003, a 1987 Buick LeSabre pulled out directly in front of their car, forcing Smith to apply the brakes suddenly. The officers noticed that the LeSabre lacked a license plate and tags. They stopped the car and spoke with the driver, who identified himself as Chester Generett. The officers then moved Generett to the back of their patrol car where Teeters continued to question him about his personal identification information. While Teeters talked to Generett, Smith returned to the LeSabre to retrieve its Vehicle Identification Number.

After Smith found the number, Teeters reported it to the dispatcher in order to establish the car's owner. The dispatcher discovered that no such car had been registered with the Tennessee Department of Transportation. At the same time, the officers discovered that Generett did not have any identification with him. Officer Smith then began an inventory search of the car, a search to which Generett consented while talking to Teeters at approximately the same time. In searching the car, Smith discovered a firearm underneath a cupholder.

As they were completing paperwork, the officers discovered that Generett was also known as Royal Mitchell and had previously been convicted of a crime and spent 14 years in federal prison. They then arrested him.

On August 26, 2003, a federal grand jury charged Generett with being a felon in possession

of a firearm in violation of 18 U.S.C. § 922(g). Generett pleaded not guilty. Before trial, Generett

filed a motion to dismiss the indictment, noting that the LeSabre "had been seized by the

Government and sold at auction," that "[o]ne issue for this trial is whether the Defendant knew that

the weapon was in the vehicle," and that "[b]ecause the government failed to maintain the vehicle

[by auctioning it shortly after seizing it], this possible exculpatory information is no longer available

to the Defendant." JA 14–15. The district court denied the motion and permitted witnesses at trial

to "describ[e] the interior of the vehicle in question." JA 26. At trial, Generett's counsel objected

when the government introduced a "similar" cupholder to demonstrate the location of the gun in the

car, arguing that:

> My objection is that today, at this late date, we are both posed with a console that
> I've never seen before, that I think that's been testified to is not affixed in any way.
> I don't have any information concerning that or not. I only had information that
> there was a console, and if this in fact was bought at Wal-Mart yesterday, I don't
> know how that could be relevant to a 1987 vehicle more than a year ago.

JA 57–58. The district court overruled the objection and permitted Officer Smith to identify "a cup

holder similar to the one that was in the defendant's vehicle." JA 59.

Following the government's proof, Generett's counsel attempted to establish that Generett

was unaware that the gun was in the car. He called a Memphis Police Department crime scene

processor, Robin Hulley, who testified that the police had found no fingerprints on the gun in the

car. He then called Generett's former employer, Rick Caldwell, who said that Generett worked for

him as a mechanic fixing cars, that Caldwell had purchased the LeSabre at issue and that Generett

had worked on it, that many people would have had access to the LeSabre and that Caldwell himself had not seen the gun in the car. The jury rejected Generett's defense and found him guilty on April 7, 2004, and the district judge, at a July 2004 sentencing hearing, sentenced him to 33 months in prison and 2 years of supervised release.

II.

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Due Process Clause requires that the State disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "Even in the absence of a specific request, the prosecution has a constitutional duty to turn over *exculpatory evidence* that would raise a reasonable doubt about the defendant's guilt." *Id.* (emphasis added) (citing *United States v. Agurs*, 427 U.S. 97, 112 (1976)).

The same strict rule, however, does not apply to *potentially* exculpatory evidence. Because courts would "face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed," the government's failure to preserve "potentially exculpatory evidence" does not raise a similar constitutional problem. *Trombetta*, 467 U.S. at 486. So long as government officials do not destroy evidence "in a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its progeny," so long as they act "in good faith and in accord with their normal practice," and so long as "[t]he record contains no allegation of official animus towards [the criminal defendant] or of a conscious effort to suppress exculpatory

evidence," *id.* at 488, their actions do not offend the Due Process Clause. *See also Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."); *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996) (noting that the unconstitutionality of a failure to "preserve evidence whose exculpatory value is indeterminate" turns on (1) the government's "bad faith in failing to preserve the evidence," (2) whether "the exculpatory value of the evidence was apparent before its destruction" and (3) whether "the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means").

Generett has satisfied neither the *Brady* nor the *Trombetta* test. *Brady v. Maryland*, to begin with, does not apply. The LeSabre from which Officers Teeters and Smith recovered the firearm—as Generett himself appears to recognize, *see* Generett Br. at 13 ("[T]he disposal of the car, in essence, destroyed potentially useful evidence that may have been exculpatory in nature.")—was at best only potentially useful evidence. *See Illinois v. Fisher*, 540 U.S. 544, 548 (2004) (deeming destroyed evidence to be only "potentially useful" when "[a]t most, [the defendant] could hope that, had the evidence been preserved, a *fifth* test conducted on the substance would have exonerated him"); *Youngblood*, 488 U.S. at 58 (holding that the "failure of the police to refrigerate [ ] clothing and to perform tests on [ ] semen samples can at worst be described as negligent" and did not violate the Due Process Clause); *Trombetta*, 467 U.S. at 488–89 (holding that samples of breath taken from a breathalyzer test were only potentially useful to a criminal defendant convicted of drunk driving);

*United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001) (rejecting defendant's argument that "the destruction of electrical evidence [that] prevented his expert from conducting future tests, the results of which may have exonerated him" violated *Brady*); *Jobson*, 102 F.3d at 217–18 (classifying the "radio dispatch tape made during defendant's arrest" as potentially useful evidence). Generett has given us no reason why the LeSabre or its contents plainly would exculpate him and indeed he has not even cited *Brady v. Maryland* in his brief to this court.

Generett fares no better under the "potentially exculpatory evidence" test. Most importantly, he has given us no reason to believe that the government officials acted in bad faith by auctioning off the LeSabre in this case. The record reveals no evidence of a "calculated effort to circumvent [*Brady*'s] disclosure requirements" or "official animus" or a "conscious effort to suppress exculpatory evidence." *Trombetta*, 467 U.S. at 488; *Youngblood*, 488 U.S. at 58; *Jobson*, 102 F.3d at 218 (holding that, despite "the government's dilatory response to defendant's discovery requests," the government did not act in bad faith because "[t]here is no evidence that anyone . . . suspected that the tape was exculpatory" and "[t]he tape was erased not as a result of malice, but routine police department policy"); *cf. Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002) ("When the government is negligent, or even grossly negligent, in failing to preserve potentially exculpatory evidence, bad faith is not established."); *Wright*, 260 F.3d at 572 ("Even if the fire investigators were negligent in failing to preserve electrical evidence, negligence does not constitute bad faith."). Nor does the mere fact that the government disposed of the LeSabre by selling it at an auction by itself establish bad faith or indeed provide any sort of inference that government officials acted in bad

faith. *See United States v. Lee*, 399 F.3d 864, 865 (7th Cir. 2005) (no due process violation occurred when "the local jail gave the [defendant's] cargo pants to charity"); *United States v. Cruz*, No. S1 94 Cr. 279, 1994 U.S. Dist. LEXIS 15577, at *13–14 (S.D.N.Y. Nov. 1, 1994) (rejecting due process argument when government auctioned vehicle and vehicle was then destroyed for salvage). Generett has made no argument that auctioning off seized vehicles that appear to have no evidentiary value is an unreasonable way to manage scarce police resources and space. Nor has he argued that *this* auction was contrary to the police department's "normal practice." *Trombetta*, 467 U.S. at 488 (quoting *Killian v. United States*, 368 U.S. 231, 242 (1961)). Under these circumstances, no due process violation occurred.

III.

For these reasons, we affirm.