# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ELVIN JOEL VEGA,

Defendant-Appellant.

UNPUBLISHED
September 15, 2016

No. 327536
Oakland Circuit Court
LC No. 2014-251260-FC

Before: CAVANAGH, P.J., and SAAD and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of felon in possession of a firearm (felon-in-possession), MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 3 to 25 years' imprisonment for his felon-in-possession conviction and five years' imprisonment for his felony-firearm conviction. We affirm.

This case arises from a shooting in Detroit, Michigan on June 22, 2014. The victim, Devontae Addison, drove to a Sunoco gas station near his house. When he returned home, he realized someone had been following him. He heard voices, and before he got out of his vehicle, he saw a man pointing a gun at him. The man told Devontae to give him everything he had. When Devontae refused, he was shot in the head. Devontae and his sister identified defendant as the perpetrator to authorities following the shooting.[2] Additionally, Devontae told the treating paramedic that the incident had begun at the Sunoco station, where he had a confrontation with defendant. Investigating detective Edward Wagrowski testified that a few hours after the shooting, he went to the Sunoco station and viewed a surveillance video of the time period when Devontae was there. In the video, Detective Wagrowski saw Devontae enter the store. Defendant entered shortly thereafter and stood in the doorway. Detective Wagrowski testified

---

[1] Defendant was found not guilty of armed robbery, MCL 750.529, and another count of felony-firearm.

[2] At trial, both Devontae and his sister presented inconsistent testimony regarding defendant's identity as the shooter and denied identifying defendant to police.

-1-

that defendant appeared to be yelling and gesticulating in Devontae's direction. According to Wagrowski, there was an object in defendant's waistband. He testified that defendant was continuously grabbing and adjusting this object and, from the outline of the object under defendant's T-shirt, that it appeared to be a firearm.

Defendant's issues on appeal concern the admission of Detective Wagrowski's testimony regarding the contents of the video. The record shows that neither defendant nor the prosecution were aware of the existence of the video until police informed the prosecution on the morning of the third day of trial that Detective Wagrowski had viewed the video. Defendant acknowledged that there was no bad faith on the part of the prosecution in failing to present the video or in informing defendant of it at such a late time in the proceedings, but defendant argued that Detective Wagrowski's testimony regarding the video's contents should not be admitted pursuant to the best evidence rule. The trial court overruled the objection and permitted Wagrowski's testimony. In the jury's presence, Detective Wagrowski testified that he did not inform the prosecution of the video until the morning of trial. He testified that he watched the video on June 23, 2014, and created a supplemental report regarding the video on June 24, 2014. Detective Wagrowski testified that he asked an employee at the Sunoco station to provide him a copy of the video, but he never received a copy.

Defendant first argues that his constitutional right to due process and the right to present a defense were violated by the bad faith failure of police to produce the surveillance video. We disagree.

While defendant objected to Wagrowski's testimony in the trial court, he did not object on the basis that police failed to preserve the video evidence in bad faith. We review unpreserved constitutional issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "Plain error affected the defendant's substantial rights if (1) there was an error, (2) the error was clear or obvious, and (3) the error prejudiced the defendant." *People v Heft*, 299 Mich App 69, 78–79; 829 NW2d 266 (2012). We note that defendant agreed in the trial court that there was no bad faith on behalf of the prosecutor, therefore waiving any potential claim that the prosecution acted in bad faith. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

"A criminal defendant can demonstrate that the state violated his or her due process rights under the Fourteenth Amendment if the state, in bad faith, failed to preserve material evidence that might have exonerated the defendant." *Heft*, 299 Mich App at 79. In order to justify reversal based on a claim that the prosecutor violated his due process rights by failing to preserve evidence, the defendant must prove that (1) the missing evidence was exculpatory, or that (2) law enforcement personnel acted in bad faith. *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007). To establish that the police violated his right to the due process of law by "fail[ing] to preserve *potentially useful* evidence," the defendant must demonstrate that the police acted with bad faith. *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988) (emphasis added); see also *Hanks*, 276 Mich App at 95 (stating same). "Defendant bears the burden of showing that the evidence was exculpatory or that the police acted in bad faith." *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). "If the defendant cannot show bad faith or that the evidence was potentially exculpatory, the state's failure to preserve evidence does not deny the defendant due process." *Heft*, 299 Mich App at 79.

Defendant asserts that the police acted in bad faith in failing to preserve the video. Defendant claims that bad faith was evident because Wagrowski intended to use the video evidence at trial, illustrated by Wagrowski's creation of a supplemental report regarding the contents of the video. However, after Wagrowski viewed the video and completed his report, police conducted no further investigation into the matter, and failed to inform the prosecution and defendant about the video's existence. As a result, defendant had no defense to Wagrowski's damaging testimony regarding the contents of the video. The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed. *Youngblood*, 488 US at 56 n *. To establish bad faith, "a defendant must prove 'official animus' or a 'conscious effort to suppress exculpatory evidence.' " *United States v Jobson*, 102 F3d 214, 218 (CA 6, 1996).

We do not agree that the police acted in bad faith. Detective Wagrowski testified that he created the supplemental report regarding the video after his investigation on the night of the crime. It does appear that the police neglected to follow up on obtaining the video after the Sunoco employee failed to send the video to Detective Wagrowski. While this fact may indicate the police conducted a careless investigation, which defendant was certainly free to emphasize to the jury during cross-examination and argument, it does not establish a violation of defendant's constitutional rights. This is especially true because the video was not exculpatory. *Youngblood*, 488 US at 56 n *. In fact, based on Detective Wagrowski's testimony, the video was likely detrimental to defendant's case. Defendant also argues that Detective Wagrowski's testimony regarding the contents of the video was not credible because of various inconsistencies and memory lapses. However, "[i]t is the province of the jury to determine questions of fact and assess the credibility of witnesses." *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998).

Defendant next argues that Detective Wagrowski's testimony regarding the contents of the video violated the best evidence rule. "Preserved evidentiary rulings are reviewed for an abuse of discretion." *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id.* at 217.

MRE 1002 provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." "An 'original' of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it." MRE 1001(3). However, "[t]he original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if[,]" among other reasons, "[a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith . . . ." MRE 1004(1).

Pursuant to MRE 1002, to prove the contents of the surveillance video, the original was required unless it had been lost or destroyed. Initially, we note the inadequacy of the trial court's decision regarding whether the video was lost or destroyed. The trial court and prosecutor agreed that it was unknown what happened to the video. Thus, there was no finding that the video was lost or destroyed.

However, while the trial court abused its discretion in failing to adequately determine and decide whether the video was lost or destroyed, we conclude that this does not amount to reversible error. "[A] preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495–496; 596 NW2d 607 (1999) (internal quotation marks omitted); see also MCL 769.26. Here, there was testimony from multiple witnesses that defendant possessed a gun on the night of June 22, 2014. Thus, the evidence supporting defendant's convictions of felon-in-possession and felony-firearm was adequate even without Detective Wagrowski's testimony regarding the contents of the video. Moreover, the likelihood that the video still exists seems improbably low given the time that has passed since offense. Therefore, we do not agree that the error warrants reversal.

Defendant also argues that Detective Wagrowski's testimony violated MRE 403 because the probative value of the testimony was substantially outweighed by the danger of unfair prejudice. Defendant primarily questions the reliability of Wagrowski's testimony, particularly due to the fact that 10 months had passed since he had originally viewed the video. Moreover, defendant notes that Wagrowski's report[3] did not include the most significant portion of Wagrowski's testimony—that Wagrowski saw a bulge in defendant's waistband under his T-shirt that resembled a handgun. However, as discussed above, credibility was a question for the jury. *Lemmon*, 456 Mich at 637. Detective Wagrowski testified that he viewed the video on the night of the incident, so the jury was aware of the amount of time that had passed. Defense counsel also questioned Wagrowski regarding the discrepancies between his testimony and his report. Given the probative value of Wagrowski's testimony, especially in light of the inconsistent testimony at trial regarding defendant's identity, as well as defendant's opportunity to question Wagrowski's reliability in front of the jury, we reject defendant's position.

Defendant next argues that the trial court erred in admitting Detective Wagrowski's testimony because it violated the trial court's scheduling order. A trial court's decision regarding discovery in a criminal case is reviewed by this Court for an abuse of discretion. *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2003). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217.

"A defendant is entitled to have produced at trial all the evidence concerning his guilt or innocence that is within the prosecutor's control." *People v Daniel*, 207 Mich App 47, 56; 523 NW2d 830 (1994). Specifically, MCR 6.201(B)(1) provides that "[u]pon request, the prosecuting attorney must provide each defendant: (1) any exculpatory information or evidence known to the prosecuting attorney . . . ."

If a party fails to comply with this rule, the court, in its discretion, may order the party to provide the discovery or permit the inspection of materials not previously

---

[3] Defendant also argued that it was unknown when Wagrowski wrote the report. However, Wagrowski testified that the report was dated June 24, 2014, and that he wrote it when it was fresh in his memory.

disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances. [MCR 6.201(J).]

"When determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002). The trial court should also examine whether a defendant was actually prejudiced by the violation. *People v Davie*, 225 Mich App 592, 598; 571 NW2d 229 (1997).

Defendant bases his argument on *Duray Dev, LLC v Perrin*, 288 Mich App 143, 162-165; 792 NW2d 749 (2010), asserting that the trial court failed to apply the eight factors listed by the *Duray* Court that a trial court *may* consider when fashioning a remedy for a discovery violation. However, defendant's claim is misplaced because *Duray* concerns a violation of MCR 2.401, which is not at issue in this case and does not apply to criminal cases. Further, we do not agree that the prosecution violated the scheduling order, although notably the prosecution has conceded that point on appeal. The scheduling order provided that "[i]f at any time a party discovers additional information or material subject to this order after the close of discovery, the party, without further request, must promptly notify the other party and the Court." Here, there was no dispute that the prosecution informed defendant and the trial court about evidence regarding the video immediately after the prosecution learned of the existence of that evidence. Thus, the prosecution complied with the scheduling order's directions with regard to evidence discovered after the close of discovery. For the same reason, there was no violation of MCR 6.201(B)(1) because there is no indication that the prosecution failed to provide defendant with "evidence *known to the prosecuting attorney . . . .*" MCR 6.201(B)(1) (emphasis added).

Defendant next argues that Detective Wagrowski's testimony regarding the video's contents encroached on the province of the jury. We review this unpreserved argument for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764. Defendant relies on *People v Fomby*, 300 Mich App 46, 52-53; 831 NW2d 887 (2013) in making his argument. In *Fomby*, this Court considered whether a certified video forensic technician could comment on video evidence and determined the testimony was "properly admitted as lay opinion testimony under MRE 701." *Id.* at 48, 50. However, a lay witness "cannot express an opinion on the defendant's guilt or innocence of the charged offense." *Id*. at 53 (citation omitted). The *Fomby* Court held that the issue of whether a defendant is the same person depicted in surveillance video footage is generally a determination properly left to the jury when the witness is in no better position than the jury to identify a defendant in the video. *Id.* at 52-53. Here, defendant's claim fails because the video was not available for the jury. Thus, Detective Wagrowski was in the best position to determine whether defendant was depicted in the video because he was the only witness who had seen the video.

Defendant also briefly asserts that Detective Wagrowski's testimony that the video showed defendant with a gun under his T-shirt was expert testimony rather than lay witness testimony. We disagree, and conclude that the testimony was "rationally based on [Detective Wagrowski's] perception." MRE 701. Specifically, Detective Wagrowski saw defendant adjusting and grabbing an object on his waistband and under his T-shirt. Detective Wagrowski saw that this object was in the outline of a gun. Thus, Detective Wagrowski rationally inferred

that defendant had a gun under his T-shirt. MRE 701; *Fomby*, 300 Mich App at 50-52. Defendant argues that the testimony constituted expert testimony because Detective Wagrowski used a technique called "printing" to determine that defendant possessed a gun. However, our review of the record reveals that Detective Wagrowski testified that defendant's T-shirt pressing against the gun in his waistband was an action known as printing. There was no testimony that Detective Wagrowski used a special technique to determine that defendant possessed a gun other than his rational perception. Defendant has not established plain error.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Henry William Saad
/s/ Karen M. Fort Hood