NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0227n.06
Filed: March 31, 2006

No. 04-3640

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DAVID W. BURCH, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| UNITED STATES DEPARTMENT OF | ) | STATES DISTRICT COURT FOR THE |
| AGRICULTURE, FOOD AND | ) | NORTHERN DISTRICT OF OHIO |
| NUTRITION SERVICE, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before: GIBBONS, GRIFFIN and BRIGHT[*], Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff-appellant David Burch appeals from

the district court's affirmance of the decision of the United States Department of Agriculture

("USDA"), Food and Nutrition Service ("FNS"), to permanently disqualify Burch's store, DB's

Check Mart (the "store" or "Check Mart"), from participation in the federal food stamp program (the

"program"). For the following reasons, we affirm the district court's decision.

The FNS permanently disqualified Check Mart from the federal food stamp program after

it determined that the store's personnel unlawfully trafficked in food stamps in violation of 7 U.S.C.

---

[*]The Honorable Myron H. Bright, United States Court of Appeals for the Eighth Circuit,
sitting by designation.

1

§ 2021(b)(3)(B) and 7 C.F.R. § 278.6(e)(1)(i). Following that administrative action, Burch filed a complaint in district court in accordance with 7 U.S.C. § 2023(a)(13), which provides for *de novo* judicial review of final administrative decisions by the FNS. After the parties consented to having the case heard by a magistrate judge, a bench trial was conducted. At trial, William Krause, an FNS program specialist, testified about the administration of the food stamp program. Krause testified that Check Mart was permanently disqualified from the program as a result of an investigation, which was carried out by the USDA Office of Inspector General and the Akron Police Department, that determined that food stamp benefits were being redeemed for cash and non-food items at Check Mart. Krause also testified that the store was disqualified based on an analysis of the store's electronic benefit transfer ("EBT") data, which tracks food stamp transactions electronically. According to Krause, the data revealed that certain transactions at the store could not be legitimate transactions and therefore likely reflected trafficking activity.

Detective Dan Hudnall of the Akron Police Department then testified that he was involved in the investigation of Check Mart that uncovered trafficking. Hudnall testified that an undercover source, Joe Mollis, with whom the investigation was working, was able to exchange food stamps for cash or ineligible items on three occasions: Mollis exchanged $100 in paper food stamps for $40 cash and a six pack of beer with Daniel Burch, the plaintiff's brother, on February 14, 2000; Mollis exchanged money on an EBT card for cash and beer with Diane Roebuck on February 24, 2000; and Mollis bought ineligible beer using food stamps on March 16, 2000. Detective Kandy Shoaf of the Akron Police Department testified that she was also involved in the investigation of Check Mart. Shoaf testified that she accompanied Joe Mollis into the Check Mart on March 16, 2000. Mollis

2

attempted to exchange food stamps for cash but was told to come back later to sell food stamp benefits. Shoaf testified that Mollis was able to purchase beer using food stamps at that time. Joe Mollis then testified that he participated as an undercover source and sold food stamps to employees of Check Mart on each of the three different occasions in February and March 2000. Mollis testified that the first transaction was with Daniel Burch, while the second and third were with Diane Roebuck. Finally, James Owens, a USDA agent, testified that he also participated in the investigation and that Joe Mollis was able to sell food stamp benefits for cash.

Diane Roebuck testified that she volunteered at Check Mart, helping with check cashing, money orders, money grams, and cleaning. Daniel Burch testified that he assisted in going to the bank for the store and doing construction for the store. Daniel Burch also testified that Diane Roebuck worked, although without pay, 12- to 14-hour days at Check Mart, seven days a week.

On March 9, 2004, the magistrate judge affirmed the FNS's decision to permanently disqualify Check Mart from the program and dismissed Burch's complaint. In an accompanying memorandum opinion, the magistrate judge made, in part, the following findings of fact: (1) on February 14, 2000, Joe Mollis sold food stamps to Daniel Burch in exchange for cash and alcohol; (2) on February 23, 2000, Joe Mollis sold an authorization card to Diane Roebuck in exchange for cash and alcohol; and (3) on March 16, 2000, Joe Mollis, accompanied by detective Shoaf, exchanged food stamp benefits with Diane Roebuck for alcoholic beverages and other miscellaneous items. The magistrate judge found that Daniel Burch and Diane Roebuck "performed duties in various capacities at the store, including management and occasionally clerking at the cash register." The magistrate judge concluded that Daniel Burch and Diane Roebuck were personnel of the store

3

and had engaged in trafficking on these three occasions. Therefore, the magistrate judge held that the FNS action to permanently disqualify Check Mart from the program was valid. With respect to the EBT data offered by the government, although the magistrate judge did not challenge the authenticity of the data, she concluded that the transactions reflected in the data did not constitute trafficking. Burch filed a timely notice of appeal.

On appeal, we review the district court's findings of fact for clear error. Fed. R. Civ. P. 52(a). The district court's conclusions of law are reviewed *de novo*. *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996).

Burch first argues that exculpatory evidence, the discovery of which will demonstrate that FNS intentionally framed Burch, was concealed by FNS. Specifically, Burch argues that there were two instances prior to the three trafficking violations in which various individuals tried to get Daniel Burch to violate the food stamp laws. Burch fails to state what specific evidence he seeks or whether he previously requested any evidence regarding the prior incidents. Based on our review of the bench trial record, it does not appear that he ever did request any such evidence. Moreover, Burch does not explain how any evidence concerning the earlier incidents, assuming such evidence exists, relates to the narrow issue in this case: whether Check Mart engaged in food stamp trafficking on the three dates in question. Beyond his conclusory assertion that the other two instances provide evidence of a "frame-up" and motive to frame him by the government, Burch offers no basis on which this court could reach such a conclusion.

Burch also argues that the government's enforcement action was untimely. Any claim that the government's delay bars enforcement of the regulation fails, because the government is generally

4

not subject to the defense of laches in enforcing its rights. *Hatchett v. United States*, 330 F.3d 875, 887 (6th Cir. 2003). Moreover, at trial, Burch plainly admitted that he could not show any prejudice to him arising from the government's delay in enforcing the regulation.

Burch asserts that the government's failure to preserve exculpatory evidence violated his due process rights. In support of his due process claim, Burch cites to *United States v. Wright*, 260 F.3d 568 (6th Cir. 2001), which held that a criminal defendant's due process rights were not violated when investigators negligently failed to preserve potentially useful evidence. This court's *Wright* case derives from principles, outlined in *Arizona v. Youngblood*, 488 U.S. 51 (1988) and *California v. Trombetta*, 467 U.S. 479 (1984), that involve a criminal defendant's right to present a complete defense and "'what might loosely be called the area of constitutionally guaranteed access to evidence.'" *Trombetta*, 467 U.S. at 485 (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)). Burch neither argues nor cites to any authority indicating that a criminal defendant's right to certain evidence is applicable to a civil action challenging an administrative decision to disqualify a business from the federal food stamp program.

The record does not indicate that Burch requested the allegedly exculpatory evidence prior to trial. Moreover, at trial, Burch acknowledged that the absence of the allegedly missing evidence – the cash and non-cash items involved in the transactions and Check Mart's security video tapes on the transaction dates – had not prejudiced his case in any way. Nor does he suggest any prejudice now. With regard to the cash used in the transactions, it is not disputed that an FNS agent, who was not involved in the case, stole the cash from an evidence locker. The government did not attempt to enter any of the non-cash items into evidence. The security videotapes were erased by Burch

5

before he knew of the administrative investigation or disqualification. There is no basis for finding a due process violation under the circumstances presented here.

Burch also argues that the evidence offered at trial was insufficient to sustain the FNS's decision. Initially, it should be noted that many of Burch's assertions revolve around the alleged invalidity of the EBT data introduced by the government. We need not consider these arguments, however, because the magistrate judge did not rely on the EBT data and specifically concluded that the transactions manifested in that data were not trafficking. Thus, the validity of the EBT data is irrelevant. The remainder of Burch's assertions involve credibility determinations and the weight given to certain evidence. Our own review of the record leads us to conclude that the magistrate judge's factual findings in this case were supported by ample evidence in the form of testimony from the government's investigating officers. The magistrate judge's findings were not clearly erroneous.

Finally, Burch challenges the constitutionality of 7 C.F.R. § 278.6, arguing that the regulation is vague and overbroad. The challenged regulation provides that the FNS shall disqualify a firm permanently from the food stamp program if "personnel" of the firm have "trafficked" in food stamps. 7 C.F.R. § 278.6(e)(1)(i).[1] "Trafficking" is defined in the regulations as "the buying or selling of coupons, ATP cards or other benefit instruments for cash or consideration other than eligible food . . . ." 7 C.F.R. § 271.2. Although "personnel" is not defined in the regulations, we have previously defined the word as it is used in this regulation. Giving the word its ordinary

_____

[1]The statutory basis for this regulation is found at 7 U.S.C. § 2021(b)(3)(B), which provides that a store may be permanently disqualified from the federal food stamp program based on a single instance of the trafficking in or purchasing of coupons or authorization cards. Although the statute allows for a lesser sanction if certain conditions are met, *see Bakal Bros., Inc. v. United States*, 105 F.3d 1085, 1088-89 (6th Cir. 1997), those conditions are not relevant to this case.

6

meaning, the court interpreted personnel to be "'a body of persons employed in some service' or 'a body of employees that is a factor in business administration.'" *Bakal Bros., Inc. v. United States*, 105 F.3d 1085, 1089 (6th Cir. 1997) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1687 (1971)).

A challenge to the constitutionality of a regulation is reviewed *de novo*.[2] *See, e.g., Jifry v. F.A.A.*, 370 F.3d 1174, 1182 (D.C. Cir. 2004); *United States v. Hsu*, 364 F.3d 192, 196 (4th Cir. 2004); *Gonzalez v. Metro. Transp. Auth.*, 174 F.3d 1016, 1018 (9th Cir. 1999). The general standard for a vagueness challenge is whether the law gives "fair notice of the offending conduct." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972). Moreover, "regulatory statutes governing business activities, where the acts limited are in a narrow category [receive] greater leeway . . . ." *Id.* In *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, the Supreme Court reaffirmed that

> economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.

455 U.S. 489, 498 (1982) (footnotes omitted). With this framework in mind, we turn to Burch's challenge to the regulation.

---

[2]Although the government briefly refers to *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984), in its brief, we do not understand Burch to raise an issue with the agency's construction of the statute. Burch argues that the regulation is unconstitutionally vague, not that the regulation is either contradictory to or an unreasonable interpretation of the statute.

7

The magistrate judge found that "Diane Roebuck and Daniel Burch performed duties in various capacities at the store, including management and occasionally clerking at the cash register." Indeed, Burch admits in his appellate brief that both "Diane Roebuck and Daniel Burch were volunteer employees at [] Check Mart." Giving personnel its ordinary meaning, as we did in *Bakal Bros.*, the regulation's prohibition on trafficking by "personnel of the firm" gave fair notice to Burch that he could be held liable for the actions of "volunteer employees" or individuals whose duties at the store included "management and occasionally clerking at the cash register."

Burch acknowledges *Bakal Bros.* but argues that our interpretation of personnel in that case actually conflicts with the position of the agency, thereby making the regulation even more vague. Krause, the FNS specialist, testified at trial that personnel could include a non-employee who is allowed by a store owner to go behind the store's counter and has access to the cash register. Relying on Krause's testimony, Burch puts forward various hypothetical individuals that might test the limits of the agency's proffered definition of personnel. We need not address any theoretical inconsistency between our prior interpretation of the regulation in *Bakal Bros.* and the agency expert's testimony. It is well settled that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550 (1975). Thus, although Burch posits hypothetical individuals that might fall outside of the ordinary meaning of personnel, the actual individuals involved in trafficking in this case fit squarely within the regulation's plain meaning as this court has previously interpreted it in *Bakal Bros.*

8

Finally, Burch challenges the regulation as unconstitutionally "overbroad" because it does not give the store owner an opportunity, without fear of liability, to renounce and report trafficking activity after the employer has discovered it. Burch is correct that liability may attach the moment a firm's personnel engage in trafficking; however, there is no requirement that a liable store owner be provided with the opportunity to escape disqualification by renouncing the actions of his employees. Indeed, this court has previously determined that no such provision is required. *See Bakal Bros.*, 105 F.3d at 1088-89 (holding that an innocent owner could be permanently disqualified from the program); *Goldstein v. United States*, 9 F.3d 521, 524 (6th Cir. 1993) (same).

For the foregoing reasons, the district court's decision is affirmed.