**UNITED STATES of America, Plaintiff,**

v.

**Robert BURSTON, Defendant.**

No. 07–20513.

United States District Court, E.D. Michigan, Southern Division.

Nov. 26, 2008.

Craig A. Weier, U.S. Attorney's Office, Detroit, MI, for Plaintiff.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BURSTON'S MOTION IN LIMINE

DAVID M. LAWSON, District Judge.

Defendant Robert Burston is charged in two counts of an indictment alleging conspiracy and uttering counterfeit securities arising from a scheme to steal motor vehicles by using counterfeit bank checks to make purchases from individual sellers. The matter is before the Court on the defendant's motion *in limine* to prevent the government from introducing at trial evidence of or expert testimony regarding a check that was negotiated by a person going by the name of "Joseph Goode." The government believes that "Joseph Goode" was a false name used by defendant Burston, who cashed the check at a bank to liquidate proceeds of one of the car thefts. However, the check has been destroyed, and Burston argues that it would be unfair to allow the government to use it when Burston no longer can have it analyzed by a handwriting expert to show that he was not the endorser. The government opposes the motion. The Court heard oral argument on November 24, 2008, and now finds that the motion should be granted in part.

### I.

On January 10, 2003, a vehicle was purchased with a forged Comerica Bank check in the amount of $12,000. This vehicle (Burston says that it was a 1998 Chrysler Town and Country; the government says that it was a 1999 Lexus) was then sold to Bi–Lo Auto Sales (doing business as Wiegands Auto World) on the same date. Bi–Lo issued two checks for this purchase: one to Dennis Goode in the amount of $6,000 and one to Joseph Goode in the amount of $5,000.

Dennis Goode and his companion—whom the government believes is Burston—went to Huntington Bank in the Detroit Metropolitan Area to cash the checks. Bank policy apparently required that individuals who did not have accounts with the bank leave inked fingerprint impressions on the check, and that was done at the time. During the investigation of this fraud by state authorities, the fingerprint on the "Joseph Goode" check was checked through the Automatic Fingerprint Identification System (AFIS), which was unable to produce a match. The government cannot say what happened to the original check, but apparently it was destroyed, since all parties agree that it is not available now. However, a photocopy had been made. The front of the check apparently contains two fingerprints, and the back of the check contains an endorsement by "Joseph Goode."

In September 2008, at the request of case agent Darren Dodd, the check fingerprint was reexamined (using the photocopy) and compared to Burston's fingerprint as taken at the time of his arrest. This time, an expert found a match.

Defendant Burston argues that no evidence of the check or its use in the transactions of January 10, 2003 should be allowed. Burston reasons that questioned document experts generally agree—as does the government, apparently—that handwriting analysis to determine whether a specific individual was the one who wrote

words on paper must be performed on the original document. A photocopy will not do. Since the original of the check is no longer available, Burston says he is deprived of the right to prove through an expert that someone other than him endorsed the back of the check.

## II.

The defendant's argument raises two separate issues: the admissibility of the photocopy of the check under the rules of evidence; and the fairness of using the evidence under the Due Process Clause. Turning to the first issue, it appears that the government will offer the check in evidence to prove what is contained in the writing, including the fingerprint impressions. The rules of evidence provide: "To prove the content of a writing, ... the original writing ... is required, except as otherwise provided in these rules or by Act of Congress." Fed.R.Evid. 1002. Duplicates—such as photocopies—may be admitted in place of an original "unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R.Evid. 1003. Secondary evidence of the contents of an original document may be received if the original is lost or destroyed "unless the proponent lost or destroyed them in bad faith." Fed.R.Evid. 1004(1). According to the Advisory Committee, "[l]oss or destruction of the original, unless due to bad faith of the proponent, is a satisfactory explanation of nonproduction." Commentary to 1972 Amendments to Rule 1004.

█ The photocopy of the check constitutes a "duplicate" within the meaning of Rule 1003. *See* Fed.R.Evid. 1001(4). There does not appear to be any challenge to the check's authenticity or to the premise that the photocopy is an accurate reproduction of the original. *See United States v. Rose*, 522 F.3d 710, 715 (6th

Cir.2008). And although there is no evidence in the record of what happened to the original check, there is no suggestion that it was destroyed in bad faith. Consequently, the only obstacle to receiving the photocopy in lieu of the original check is if under the circumstances it would be unfair to defendant Burston to do so. Fed. R.Evid. 1003(2).

The government cites *United States v. Bakhtiar*, 994 F.2d 970 (2d Cir.1993), for the proposition that the defendant cannot raise the issue of unfairness on the eve of trial. In that case, the Second Circuit held that a photocopy of a check could be received in evidence in lieu of the original in the face of the defendants' objection that they needed to examine the original for latent fingerprints to prove they did not handle the check. But in that case, the defendants waited until two weeks before trial to make the request for testing, despite having the evidence considerably earlier and knowing that the examination they sought would take several weeks. The court reasoned that "the late request thus demonstrated that the defendants were not serious about needing fingerprint analysis or other expert analysis of the checks, but simply looking for a way out of the trial." *Id.* at 979. The Sixth Circuit relied on *Bakhtiar* in an unpublished decision, suggesting that the original writings rule embodied in Rule 1002 focuses on the contents of the writing, not the opportunity for forensic testing. *See United States v. Atman*, 145 F.3d 1333, 1998 WL 211767, at *5 (6th Cir.1998); *see also United States v. Moore*, 30 F.3d 135, 1994 WL 276898, at *2 (6th Cir.1994).

█ This case is somewhat different, however. Information that the fingerprint on the check matched Burston's came to the defendant relatively late in the process. His present objection based on an inability to test the evidence cannot be

written off to an effort to delay the trial. Even then, it appears that the fingerprint can be analyzed from the photocopy (it is not a latent print but rather an inked impression, and there has been *no* request to test for latent prints); it is the signature on the back of the check that is the focus of the defendant's concern. That signature is part of the contents of the writing.

Under those circumstances, the Court believes that it would not be unfair to receive a photocopy of the front of the check into evidence. The contents of that part of the document are not in dispute, and the defendant makes no claim that he cannot test or analyze the inked fingerprint based on the photocopy. However, the Court also believes that the loss of the original puts the defendant at a disadvantage when it comes to confronting the signature on the back of the check. If the government argues that the defendant endorsed the name "Joseph Goode" on the back of the check, the defendant has no way of disputing that conclusion with forensic evidence. The counterpart (photocopy) is useless for testing of that sort.

The defendant expands the argument to assert that the entire check should be excluded, reasoning that if he could prove that someone else wrote the name "Joseph Goode" on the check, he could distance himself from the transaction. That argument ignores the fingerprint on the front of the check. If the jury believes the government's expert that it matches Burston's known print (and accepts the evidence of the bank's custom of requiring check presenters to affix their fingerprint on the instrument), it doesn't much matter who signed the name on the back.

The government asserts that the back of the check contains other relevant information, such as the date of the transaction and other encoded information. The contents of the back of the check are not in dispute as to those items. It seems sensible, therefore, to allow the government to offer a photocopy of the front and back of the check, but forbid any argument suggesting that the signature on the back was placed there by defendant Burston. The defendant may even be entitled to a jury instruction, upon request, that there is no evidence that the defendant signed Goode's name to the check.

The remedy of allowing the exhibit but limiting its evidentiary use is bolstered by the cases addressing the second issue raised by the defendant's motion—whether using the photocopy is fundamentally unfair and therefore violative of the Due Process Clause. The Sixth Circuit recently noted:

> The failure to preserve material exculpatory evidence violates the defendant's right to due process regardless of whether the government acted in bad faith. *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *United States v. Wright,* 260 F.3d 568, 570–71 (6th Cir.2001). Constitutional materiality means that the evidence possesses both "an exculpatory value that was apparent before the evidence was destroyed and ... [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta,* 467 U.S. at 488–89, 104 S.Ct. 2528.

*United States v. Branch,* 537 F.3d 582, 589–90 (6th Cir.2008).

 In this case, however, there is no certainty that testing the signature by a questioned documents expert would be helpful to the defendant. Under those circumstances, there is a different test that applies to the evidence, as the court explained in an earlier decision:

In [*Arizona v.*] *Youngblood,* 488 U.S. at 57, 109 S.Ct. 333, the Court held that "the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." The government does not have "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Id.* at 58, 109 S.Ct. 333. For the failure to preserve potentially useful evidence to constitute a denial of due process, a criminal defendant must show bad faith on the part of the government. *See id.* "The presence or absence of bad faith by the [government actor] for the purposes of the Due Process Clause must necessarily turn on the [government actor's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* at 56 n. *, 109 S.Ct. 333. Because the Youngblood court found that police did not act in bad faith by failing to preserve potentially useful evidence, it rejected Youngblood's due process claim without further analysis.

*United States v. Wright,* 260 F.3d 568, 571 (6th Cir.2001). As noted earlier, there has been no allegation of bad faith, and it does not appear that the evidence is clearly exculpatory. Although it would be unfair to allow the government to claim that the signature on the back of the check belonged to Burston, in the absence of such an argument, receipt of the photocopy would not violate Burston's rights under the rules of evidence or the Due Process Clause.

### III.

The Court finds that the use of a photocopy of check number 11512 issued by Bi–Lo Auto Sales, Inc. to Joseph Goode, would not be unfair to the defendant, provided that the use of the evidence is limited in scope as described above. The defendant may propose an appropriate limiting instruction pursuant to Federal Rule of Evidence 105 prior to the start of trial.

Accordingly, it is **ORDERED** that defendant Burston's motion *in limine* [dkt. # 209] is **GRANTED IN PART AND DENIED IN PART.** The government may use the photocopy of the subject check, but may not argue that the signature of "Joseph Goode" on the back was made by the defendant.