[Cite as *State v. Williams*, 2023-Ohio-1634.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellee | : | Hon. Andrew J. King, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2022CA00123 |
| GEIONTAE WILLIAMS | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Criminal appeal from the Stark County
Court of Common Pleas, Case No. 2022-
CR-0844

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      May 15, 2023

APPEARANCES:

For Plaintiff-Appellee
KYLE STONE
Prosecuting Attorney
BY: LISA A NEMES
Assistant Prosecutor
110 Central Plaza South, Ste. 510
Canton, OH 44702

For Defendant-Appellant
BERNARD HUNT
2395 McGinty Road N.W.
North Canton, OH 44720

*Gwin, P.J.*

{¶1}   Defendant-appellant Geiontae Williams ["Williams"] appeals his convictions and sentences after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

{¶2}   On May 25, 2022, Williams was indicted on the charges of Felonious Assault, a felony of the second degree in violation of R.C. 2903.11(A)(1)(D)(1)(a) and Aggravated Riot, a felony of the third degree in violation of R.C. 2917.02(B)(2).   The events in this case occurred at the Ohio Department of Youth Services ["DYS"], Indian River Juvenile Correction Facility in Massillon, Stark County, Ohio, on October 17, 2022.

{¶3}   The series of events was preceded by a group of youths hanging out in the gym under the supervision of Lori Paxos, a corrections officer at the facility.   Paxos testified that while the youths were in the gym, she suspected "something was off" due to youths huddling, rather than playing basketball, and she "got the vibe that something wasn't right." 1T. at 132-33.   One of the youths in the gym at that time was J.C., who was unfamiliar with the other youths in the group, so he was standing with Paxos.  Id. at 137. Paxos testified, a "group of fellows that are in the same gang'' were huddling around and staring at J.C., who was not a gang member.   She stated she told him to watch his back.

{¶4}   Around 5:30 p.m., J.D., approached Paxos and requested to use the restroom.   Just before J.D. asked to use the restroom, A.W., another youth, had a conversation with him and made a hand motion.  1T. at 159.   At first, Paxos told J.D. "no" because the group just had the opportunity to use the restroom before they came in to the room. Id. at 145-146.   Ms. Paxos relented, however, because J.D. was adamant that he really needed to use the restroom.   Id. at 146.   Ms. Paxos contacted another staff

member to escort J.D. to the restroom.  Id. This required Ms. Paxos to partially turn her back to unlock the door, while still attempting to keep her eyes on the youths in the room. Id.

{¶5}    During this time, Williams and two other youths, A.W. and C.D., were interacting by looking at each other.  1T. at 156, 158, 186-187.  Williams gave a hand "gang sign.  1T. at 157, 159, 171.  De.T. took a swing at J.C. in an attempt to strike him from behind.  Id. at 146, 187.  J.R. and Da.T. then jumped into the affray and began assaulting J.C. Id.

{¶6}    Ms. Paxos called a "signal 5" immediately because she needed assistance to break up the fight.  A signal 5 means "assistance is needed" and requires that the "youths are immediately supposed to be out of their chair, up against the wall, facing towards the wall to secure them for safety as well." Id. at 158.  When Da.T. joined the attack, Ms. Paxos realized they had lost control.  Id. at 160.  With three youths attacking the one, Ms. Paxos escalated her request for help and called "an 88." Id. at 147, 160.  A "signal 88" indicates an emergency requiring assistance from everyone in the building, including administration, lunch staff, and maintenance staff.  Id. at 143.  The door to the room was open for more staff to come in and assist.  Id. at 160.  Ms. Paxos focused her efforts on breaking up the three youths attacking J.C.

{¶7}    A.W. was not facing the wall, but instead moving toward the door.  Williams also was moving across the room rather than staying in place with his face against the wall.  Id. at 160.  Williams and A.W. were looking at each other and moving, and then left the room.  Id. 160-161.  After A.W. left the room, he attacked a youth in the next room. Id. at 188.  Upon leaving the room, Williams went straight toward N.G., who was talking

on the phone with his mother. Williams attacked N.G. and continued to assault him after picking up a staff chair. Id. at 162. Quiana Good, a corrections officer responded to the signal and attempted to stop Williams from attacking N.G. Id. at 178. After the incident, Ms. Paxos observed Williams "laughing in his room," and "doing gang beats on his door." Id.

{¶8} De.T. testified regarding the attack on J.C. 1T. at 104. He stated the attack was a personal issue and occurred because J.C. was "talking too much," including while they were playing basketball. Id. at 104-05, 109-10. De.T. testified Williams did not know anything about the reason for the attack on J.C. 1T. at 111.

{¶9} In October 2021, then fifteen-year old N.G. was confined to the Indian River facility in the Alpha Unit. N.G. testified that he had been talking on the phone with his mother, and the next thing he recalled was waking up in the hospital about two hours later. 1T. at 116. When Williams attacked N.G., he knocked him unconscious.

{¶10} N.G. was released back to Indian River that night. Following the incident, he had to stay on bed rest for "like a day." Id. at 120. He had to get approximately four stitches in his chin. N.G. had to attend speech therapy for a couple months due to stuttering, but he was still able to communicate and attend school classes. Id. at 117, 119, 123-24. N.G. was put on recreation restriction, meaning he could not do things such as playing basketball or going to the gym. A week following the incident, he had a CAT scan due to frequent headaches. The CAT scan showed he had a concussion. N.G. has no permanent injuries from the incident. 1T. at 124.

{¶11} Shawn Anders the security threat group coordinator and gang specialist at the Indian River facility testified regarding the relevant youths and their alleged gang

affiliations.  He testified that he had knowledge and experience related to hand signals, and the signal Williams displayed was a gang hand signal.  1T. at 185, 187.  Anders further testified he was familiar with "gang beats," which are a distinct beat that gang members use to disassociate themselves from other youth.  Id. at 188. Anders further testified that Williams is a gang member.  Id. at 185. De.T. was not a gang member at the time of the incident.  Id. at 184.  N.G. and J.C. were not associated with any gangs.  1T. at 182; 187.

{¶12}  The jury was shown a video of the events as they transpired on October 17, 2022. State's Exhibit 1.

{¶13}  Following deliberations, the jury returned a verdict finding Williams guilty of aggravated riot, and guilty of assault, a misdemeanor of the first degree, as a lesser included offense of felonious assault.

{¶14}  The trial judge sentenced Williams to thirty-six months incarceration on the charge of Aggravated Riot, to be served consecutive with Williams' sentence in Stark County Court of Common Pleas, Case No. 2022 CR 0134, and thirty-days incarceration on the charge of Assault, to be served concurrently with the sentence for Aggravated Riot.

*Assignments of Error*

{¶15}  Williams raises five Assignments of Error,

{¶16}  "I. THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT BY PERMITTING IRRELEVANT BUT HIGHLY PREJUDICIAL TESTIMONY REGARDING GANG AFFILIATION TO BE INTRODUCED AT TRIAL.

{¶17}  "II.  THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS AND ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S REQUEST

FOR A MISTRIAL BASED UPON A WITNESS'S TESTIMONY OF GANG EVIDENCE THAT WAS EXCLUDED BY THE TRIAL COURT.

**{¶18}** "III. THE TRIAL ERRED WHEN IT SENTENCED APPELLANT TO THE MAXIMUM SENTENCE FOR AGGRAVATED RIOT AND RAN THAT SENTENCE CONSECUTIVE TO THE SENTENCE HE IS CURRENTLY SERVING.

**{¶19}** "IV. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW, AS HIS CONVICTION OF AGGRAVATED RIOT WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

**{¶20}** "V.  APPELLANT' S CONVICTION OF AGGRAVATED RIOT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

**{¶21}** In his First Assignment of Error, Williams contends that evidence that Williams and other youths were affiliated with gangs was irrelevant and unfairly prejudicial.

**Standard of Appellate Review**

**{¶22}** "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). "However, we review de novo evidentiary rulings that implicate the Confrontation Clause. *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010)." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶97.

**{¶23}** We note that any error will be deemed harmless if it did not affect the accused's "substantial rights." Before constitutional error can be considered harmless, we

must be able to "declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. State of Cal.*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**Issue for Appellate Review:** *Whether the trial court violated Williams' right to a fair trial by allowing the state to present evidence of his gang affiliation, as well as the gang affiliation of some of the other youths*

### "Other acts" evidence

{¶24} In *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20, the Ohio Supreme Court set forth a three-part analysis for determining the admissibility of other-acts evidence: to be admissible, (1) the evidence must be relevant, Evid.R. 401, (2) the evidence cannot be presented to prove a person's character to show conduct in conformity therewith but must instead be presented for a legitimate other purpose, Evid.R. 404(B), and (3) the probative value of the evidence cannot be substantially outweighed by the danger of unfair prejudice, Evid.R. 403. The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law. *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22. The court is precluded from admitting improper character evidence under Evid.R. 404(B), but it has discretion to allow other-acts evidence that is admissible for a permissible purpose. *Hartman* at ¶ 22, *citing Williams* at ¶ 17.

### Gang affiliation evidence

{¶25} Trial courts must treat evidence of gang affiliation with care since most jurors are likely to look unfavorably upon a defendant's membership in a street gang. *United States v. Jobson*, 102 F.3d 214, 219 n. 4. (6th Cir. 1996). The Ohio Supreme Court has held that evidence of a defendant's gang affiliation is admissible pursuant to

Ohio Evidence Rule 404(B) to show motive. *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶170. This is particularly the case where "the interrelationship between people is a central issue." Id. (*quoting United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999)). Evidence of gang affiliation has also been held admissible to establish the defendant's opportunity to commit a crime. *United States v. Jobson*, 102 F.3d 214, 221(6th Cir. 1996). The evidence is admissible subject to balancing the probative value of such evidence against its prejudicial effect pursuant to Rule 403 of the Rules of Evidence*. See Jobson*, 102 F.3d at 221–23, 854 N.E.2d 150

**Williams' case**

{¶26} Williams was convicted of Aggravated Riot. R.C. 2917.02 provides, in relevant part,

(A) No person shall participate with four or more others in a course of disorderly conduct in violation of section 2917.11 of the Revised Code:

* * *

(2) With purpose to commit or facilitate the commission of any offense of violence;

R.C. 2917.11 Disorderly conduct provides,

(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:

(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;

(2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person;

(3) Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response;

(4) Hindering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender;

(5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.

**{¶27}** Importantly, R.C. 2917.031 provides,

For the purposes of prosecuting violations of sections 2917.02 and 2917.03 of the Revised Code, the state is not required to allege or prove that the offender expressly agreed with four or more others to commit any act that constitutes a violation of either section prior to or while committing those acts.

**{¶28}** Williams maintains that because no express agreement is required, the state could have proven its case without gang affiliation evidence. While that may be true, we find nothing in either statute that prohibits the state from introducing evidence that the individuals did in fact agree to engage in the prohibited conduct in order to

establish the "participate with four or more others in a course of disorderly conduct" element of aggravated riot.

{¶29} The state introduced the gang evidence for a purpose independent of Williams' character or propensity to commit a crime.  The gang affiliation evidence was admissible to show that it was more likely than not Williams' attack on N.G. was not a random act; rather it occurred in conjunction with the attack on J.C. and the attack on the unnamed third party. The affiliations of the individuals involved, timing of the attacks, and that the individuals who were attacked were not gang affiliated, were central to proving the interrelationship of the party's and the motive for the attacks.

{¶30}  Nor can it be said that the evidence of gang affiliation was unfairly prejudicial to Williams.  In *State v. Crotts,* the Ohio Supreme Court explained,

> As a legal term, "prejudice" is simply "[d]amage or detriment to one's legal rights or claims."  Black's Law Dictionary (8th Ed.1999) 1218.  Thus, it is fair to say that all relevant evidence is prejudicial.  That is, evidence that tends to disprove a party's rendition of the facts necessarily harms that party's case.  Accordingly, the rules of evidence do not attempt to bar all prejudicial evidence—to do so would make reaching any result extremely difficult.  Rather, only evidence that is unfairly prejudicial is excludable.

> "'Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice.  If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403.  Emphasis must be placed on the word "unfair."  Unfair prejudice is that quality of evidence which might result in an improper basis for a jury

decision.    Consequently,  if  the  evidence  arouses  the  jury's  emotional symphathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence  may  be  unfairly  prejudicial.    Usually,  although  not  always, unfairly  prejudicial  evidence  appeals  to  the  jury's  emotions  rather  than intellect.'" *Oberlin v. Akron Gen. Med. Ctr.* (2001), 91 Ohio St.3d 169, 172, 743  N.E.2d  890,  *quoting Weissenberger's  Ohio  Evidence*  (2000)  85–87, Section 403.3.

104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23-24.  In the case at bar, the context  of  the  evidence  was  to  establish  the  participation  element  of  the  crime  of aggravated riot, not to suggest that Williams was guilty based upon his character.

**{¶31}** We  therefore  find  that  evidence  of  gang  affiliation  was  relevant  and probative  of  the  issues  in  the  case  and  the  probative  value  of  the  evidence  was  not substantially outweighed by the danger of unfair prejudice to Williams.

**{¶32}**  Williams' First Assignment of Error is overruled.

II.

**{¶33}**  Prior to the start of trial, the trial judge acknowledged  there is obviously some level of prejudice inherent in arguing that Williams is in a gang, but found the least prejudicial way  of  presenting  the  relevant  information  would  be  to  allow  evidence  that the youths are in a gang, but omit any specific reference to the specific gang name. 1T.  at  99-100.   However, during the testimony of Shawn Anders, in response to a question by the prosecutor the following exchange occurred:

Q: Okay.  And how about this fellow next to him?

A: [J.D.].

Q: Okay. Does he have any sort of gang affiliation?

A: At this time the -- of this incident, he was a passive member of the Heartless Felons.

1T. at 183. Defense counsel's motion for a mistrial was overruled by the trial judge; however, the judge did order the answer stricken and instructed the jury to disregard it. 1T. at 184.

**{¶34}** In his Second Assignment of Error, Williams contends the trial court erred in denying his motion for a mistrial.

### STANDARD OF APPELLATE REVIEW – MISTRIAL

**{¶35}** "Mistrials need to be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). The standard of review for evaluating a trial court's decision to grant or deny a mistrial is abuse of discretion. *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984). In reviewing a claim that a mistrial should have been granted, the Ohio Supreme Court has noted "[t]his court has instead adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial." *State v. Shaffer*, 5th Dist. Richland No. 2003-CA-0108, 2004-Ohio-3717, ¶18 *quoting State v. Widner* [68 Ohio St.2d 188, 429 N.E.2d 1065(1981). *See, also, Wade v. Hunter*, 336 U.S. 684, 687, 69 S.Ct. 834, 836, 93 L.Ed. 974(1949).

**{¶36}** An abuse of discretion can be found where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence.

*Tennant v. Gallick,* 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; *In re Guardianship of S.H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823, ¶54.

**Issue for Appellate Review:** *Whether the trial court abused its discretion by denying Williams' motion for a mistrial*

**{¶37}** In the case at bar, the improper answer was inadvertent and only occurred on one occasion during the trial. The trial judge admonished the jury to disregard it. "Juries are presumed to follow their instructions." *Zafiro v. United States* 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317(1993). "A presumption always exists that the jury has followed the instructions given to it by the trial court," *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313(1990), at paragraph four of the syllabus*, rehearing denied*, 54 Ohio St.3d 716, 562 N.E.2d 163.

**{¶38}** Looking at the answer in the larger context of the entire trial, we find it did not prejudicially affect Williams' substantial due process rights. The mention of the gang name was isolated, and not intentional. The state did not highlight the improper information in further questioning of any witness or in its argument to the jury. The trial court's admonishment to the jury was swift and unequivocal.

**{¶39}** We find Williams was not denied his right to due process and fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution. Further, we find beyond a reasonable doubt, that the inadvertent mention of the gang name did not contribute to Williams' conviction. *See, State v. Aeschilmann,* 5th Dist. Stark No. 2013 CA 00192, 2014-Ohio-4462, ¶95-96. Therefore, error, if any, was harmless beyond a reasonable doubt.

**{¶40}** Accordingly, the trial judge did not abuse his discretion by overruling Williams' motion for a mistrial.

**{¶41}** Williams' Second Assignment of Error is overruled.

III.

**{¶42}** In his Third Assignment of Error, Williams contends the trial court erred when it imposed the maximum, consecutive sentences. Williams maintains his sentences are contrary to law because the trial court did not consider his age when determining the length of his sentence.

**Standard of Appellate Review**

**{¶43}** In accordance with R.C. 2953.08(A)(1), Williams is entitled to appeal as of right the maximum sentence imposed on his conviction.

**{¶44}** A court reviewing a criminal sentence is required by R.C. 2953.08(F) to review the entire trial-court record, including any oral or written statements and presentence-investigation reports. R.C. 2953.08(F)(1) through (4). We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶22; *State v. Howell*, 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶31. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.2d 659, ¶28.

**Issue for Appellate Review**: *Whether Williams' sentence was imposed based on impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12*

### R.C. 2929.11, R.C. 2929.12, and Maximum Sentences

**{¶45}** A trial court's imposition of a maximum prison term for a felony conviction is not contrary to law as long as the sentence is within the statutory range for the offense, and the court considers both the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth in R.C. 2929.12. *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234, ¶ 10, 16; *State v. Taylor*, 5th Dist. Richland No. 17CA29, 2017-Ohio-8996, ¶16. "[N]either R.C. 2929.11 nor 2929.12 requires [the] court to make any specific factual findings on the record." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 20, *citing State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31, and *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000).

**{¶46}** In *State v. Bryant*, the Court clarified,

The narrow holding in *Jones* [163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649] is that R.C. 2953.08(G)(2) does not allow an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. *See Jones* at ¶ 31, 39. Nothing about that holding should be construed as prohibiting appellate review of a sentence when the claim is that the sentence was improperly imposed based on impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and

2929.12. Indeed, in *Jones*, this court made clear that R.C. 2953.08(G)(2)(b) permits appellate courts to reverse or modify sentencing decisions that are "'otherwise contrary to law.'" *Jones* at ¶ 32, *quoting* R.C. 2953.08(G)(2)(b). This court also recognized that "otherwise contrary to law" means "'in violation of statute or legal regulations at a given time.'" Id. at ¶ 34 *quoting* Black's Law Dictionary 328 (6th Ed. 1990). Accordingly, when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law. Claims that raise these types of issues are therefore reviewable.

168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, ¶22.

**{¶47}** In the case at bar, the trial court considered the pre-sentence investigation report and the statements from Williams' attorney and the state's attorney. The trial judge was informed that Williams has been incarcerated since he was 15 years old. Sent. T. at 4. At the time of sentencing Williams was 18 years old. Id. The trial judge further noted that he had sentenced Williams in Case Number 2022 CR 0134 to an indefinite term of 3 to 4.5 years. Sent. T. at 7. The trial judge noted the previous case involved Williams in an unrelated incident attacking a corrections officer while in the Indian River facility. Id. at 7-8. The judge further reviewed the violent and repeated attack Williams made on his victim, hitting him several times with a chair. Id. at 8. The attack continued even after the victim had collapsed to the floor. Id. at 8-9.

**{¶48}** It is clear from the record that the trial judge was aware of and considered Williams' youth when deciding his sentence. The trial court considered that even while

incarcerated by the Department of Youth Services, Williams committed two violent attacks on not only other prisoners, but also the correction officer.

**{¶49}** We conclude that the trial court did not commit error when it sentenced Williams. Upon review, we find that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes. While Williams may disagree with the weight given to these factors by the trial judge, Williams' sentence was within the applicable statutory range and therefore, we have no basis for concluding that it is contrary to law. Williams has not demonstrated that the trial court imposed the sentence based on impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12.

### Consecutive Sentences

**{¶50}** R.C. 2929.14(C)(2) provides that consecutive sentences are mandatory in this case,

> (2) If an offender who is an inmate in a jail, prison, *or other residential detention facility* violates section 2917.02, 2917.03 [*Aggravated Riot*], or 2921.35 of the Revised Code or division (A)(1) or (2) of section 2921.34 of the Revised Code, if an offender who is under detention at a detention facility commits a felony violation of section 2923.131 of the Revised Code, or if an offender who is an inmate in a jail, prison, or other residential detention facility or is under detention at a detention facility commits another felony while the offender is an escapee in violation of division (A)(1) or (2) of section 2921.34 of the Revised Code, *any prison term imposed upon the offender for one of those violations shall be served by the offender*

*consecutively to the prison term or term of imprisonment the offender was*

*serving when the offender committed that offense and to any other prison*

*term previously or subsequently imposed upon the offender.*

Emphasis added.

**{¶51}** Upon review, we find that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes. Because the record contains clear and convincing evidence supporting the trial court's findings we have no basis for concluding that it is contrary to law.

**{¶52}** Williams' Third Assignment of Error is overruled.

IV.

**{¶53}** In his Fourth Assignment of Error, Williams argues that there is insufficient evidence to support his conviction for aggravated riot.

**Standard of Appellate Review– Sufficiency of the Evidence.**

**{¶54}** The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 577 U.S. 92, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

**{¶55}** When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997)*; *Walker*, 150 Ohio St.3d at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* 150 Ohio St.3d at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery,* 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review**: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Williams was guilty beyond a reasonable doubt of aggravated riot*

**{¶56}** Williams was convicted of Aggravated Riot. R.C. 2917.02 provides, in relevant part,

(A) No person shall participate with four or more others in a course of disorderly conduct in violation of section 2917.11 of the Revised Code:

* * *

(2) With purpose to commit or facilitate the commission of any offense of violence;

{¶57} R.C. 2917.11 Disorderly conduct provides,

(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:

(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;

(2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person;

(3) Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response;

(4) Hindering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender;

(5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.

{¶58} Importantly, R.C. 2917.031 provides,

For the purposes of prosecuting violations of sections 2917.02 and 2917.03 of the Revised Code, the state is not required to allege or prove that the offender expressly agreed with four or more others to commit any act that constitutes a violation of either section prior to or while committing those acts.

{¶59} The state presented evidence that this was a coordinated gang attack. Signals were exchanged, the victims were non-gang members and the disruption caused was massive. Williams does not deny assaulting N.G.

{¶60} A.W., J.R., C.D., Da.T. and J.P. were fellow gang members in the room with Williams. De.T. and J.D. were either passive or aspiring members. 1T. at 183-185. A.W. spoke to J.D. and made a gesture just before J.D. distracted Ms. Paxos with the request to use the restroom. Id. at 159. Williams interacted with A.W. and C.D. and then gave the gang signal. 1T. at 156-158, 186-187. De.T. began assaulting the youth in the day room, and J.R. and Da.T. joined in the attack. Id. at 146, 187. A.W. and Williams disregarded the procedures for youths to follow when a signal is called, and they slipped out the door to carry out their respective attacks on other victims. Id. at 160-161. Williams beat his victim unconscious. Id.at 188. Williams acknowledged his actions as a member of the gang with gang beats from his room. Id. at 178. The jury viewed the video evidence that shows those who were "participating" from those who instead chose to back away from the fighting and comply with the signals from the corrections officer.

{¶61} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that

Williams participated with four or more others in a course of disorderly conduct in violation of section 2917.11 of the Revised Code with purpose to commit or facilitate the commission of any offense of violence.  We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was enough evidence to support Williams conviction for aggravated riot.

**{¶62}**  Williams' Fourth Assignment of Error is overruled.

V.

**{¶63}**  In his Fifth Assignment of Error, Williams maintains that his conviction for aggravated riot is against the manifest weight of the evidence.

**Standard of Appellate Review – Manifest Weight.**

**{¶64}**  As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient.  *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

**{¶65}**  Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, *supra,* 78 Ohio St.3d at 386-387, 678 N.E.2d 541(1997), *State v. Williams,* 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶83.  When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony.  *Thompkins* at 387, 678 N.E.2d 541, *citing Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652(1982)

(quotation marks omitted); *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1244, ¶25, citing *Thompkins.*

**{¶66}** Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.*

**{¶67}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the entire record in this matter we find Williams' conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Williams' guilt.

**{¶68}** Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of witnesses, we cannot reach the conclusion that the trier of facts lost its way and created a manifest miscarriage of justice. We do not find the jury erred when it found Williams guilty. Taken

as a whole, the testimony and record contain ample evidence of Williams participation in and responsibility for all the alleged crimes.  The fact that the jury chose to believe the testimony of the state's witnesses does not, in and of itself, render his convictions against the manifest weight of the evidence.  On a full review of the record we cannot say that the jury clearly lost its way or created a manifest injustice by choosing to believe the testimony of the state's witnesses.  The jury saw the video showing the events in real-time as they unfolded. The state presented testimony and evidence from which the jury could have found all the essential elements of the offenses proven beyond a reasonable doubt.

{¶69}  Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Williams was convicted.

{¶70}  Williams'' Fifth Assignments of Error is overruled.

{¶71}  The judgment of the Stark County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Baldwin, J., and

King, J., concur